348 A.2d 746

**WORKMEN'S COMPENSATION APPEAL BOARD and Benedict J. Nissel, Appellants,**

v.

**Harold HARTLIEB, t/d/b/a Harrisburg Machine and Welding Company, Appellee.**

Supreme Court of Pennsylvania.
Oct. 3, 1975.
Rehearing Denied Jan. 6, 1976.

Willaim J. Madden, Jr., Harrisburg, for appellant.

Lloyd R. Persun, Shearer, Mette, Hoernor & Woodside, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On April 14, 1970, Benedict J. Nissel was performing his regular duties for the Harrisburg Machine and Welding Company when a fellow employee set off an explo-

sive device nearby. Nissel felt sharp pain in both ears for several minutes and pressure in both ears for some time. Thereafter, on October 8, 1970, Nissel filed a petition with the Workmen's Compensation Board alleging that, although he had lost no time from work because of his injury, he had suffered a complete loss of hearing in both ears so as to be entitled to compensation under Section 306(c) of The Pennsylvania Workmen's Compensation Act.[1]

Section 306(c) of the Act, unlike Sections 306(a)[2] and 306(b),[3] provides compensation to an injured claimant without regard to the degree of economic disability which may result therefrom. *Lente v. Luci*, 275 Pa. 217, 220, 119 A. 132 (1922); *Shoop v. Chambersburg Baking Company*, 189 Pa.Super. 20, 23–24, 149 A.2d 179 (1959). In twenty-one numbered subsections of Section 306(c), the legislature has provided that permanent specific losses of certain enumerated parts of the body are to be compensated in accordance with a prescribed schedule. In twenty of these subsections the mere permanent "loss" of the injured member is compensable. Thus, for example, the permanent loss of a hand or the permanent loss of a foot is compensable.[4] In construing these twenty subsections our courts have determined it is not necessary that the injured part of the anatomy be of absolutely no use in order for the injured claimant to qualify for compensation. Rather, the proper test to be applied is whether the claimant has suffered the permanent loss of use of the injured member "for all practical intents and purposes". *Curran v. Walter E.*

1. Act of June 2, 1915, P.L. 739, as amended, 77 P.S. § 513.
2. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 511.
3. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 512.
4. In addition, Section 306(c)(24) provides " . . . . Permanent loss of the use of a hand, arm, foot, leg, eye, finger, or thumb, great toe or other toe, shall be considered as the equivalent of the loss of such hand, arm, foot, leg, eye, finger, or thumb, great toe or other toe."

*Knipe and Sons, Inc.,* 185 Pa.Super. 450, 547, 138 A.2d 251, 255 (1958). See also *Wall v. Workmen's Compensation Appeal Board,* 12 Pa.Cmwlth. 12, 315 A.2d 656 (1974); *Hershey Estates v. Workmen's Compensation Appeal Board,* 9 Pa.Cmwlth. 470, 308 A.2d 637 (1973).

■ However, Nissel's claim for compensation is encompassed by the provisions of Section 306(c)(8). This subsection, at the time Nissel's petition was filed, provided compensation for the permanent *"complete* loss of hearing, in both ears" [5] [Emphasis added]. We are asked in this appeal to determine whether the inclusion of the adjective "complete" in subsection (8) of Section 306(c) precludes application of the "for all practical intents and purposes" test.

Both the Referee and the Board determined the inclusion of the adjective "complete" in subsection (8) of Section 306(c) was not an indication that the legislature intended to treat a workman sustaining a loss of hearing any differently from a workman sustaining any of the other twenty enumerated losses. They, therefore, applied the "for all practical intents and purposes" test to Nissel's loss of hearing and, after determining that Nissel's loss fit within that test,[6] awarded him the compensation provided for by the statute. On appeal, the Commonwealth Court vacated the award to Nissel and dismissed the petition. See *Hartlieb v. Workmen's Compensation Appeal Board,* 12 Pa.Cmwlth. 118, 314 A.2d 519

**5.** By amendment effective May 1, 1972, Section 306(c)(8) also provides compensation for the "complete loss of hearing in one ear". However, as the accident here involved took place on April 14, 1970, the 1972 Amendment is inapplicable.

**6.** The Board found:
(1) Binaural loss of hearing of 78%;
(2) Acoustic nerve trauma reduced ability to discriminate spoken words to the degree of one foot in the right ear and three feet in the left ear;
(3) Nissel could no longer use his ears in the manner nature intended and;
(4) Nissel's ability to obtain work where hearing is required was clearly destroyed.

(1974). It held that the term "complete" must be read in a literal and absolute sense and that Nissel's loss of hearing did not satisfy the higher standard. We then granted allocatur.

■■ As a general proposition the provisions of the Act are remedial in nature and are to be liberally construed, with borderline interpretations resolved in favor of the injured employee. *Hinkle v. H. J. Heinz Company,* 462 Pa. 111, 337 A.2d 907 (1975); *U. S. Steel Corp. v. Workmen's Compensation Appeal Board,* 10 Pa.Cmwlth. 247, 249, 309 A.2d 842 (1973). However "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit". 1 Pa.S. § 1921(b) (Supp.1975–1976); *Symons, Jr. v. National Electric Products, Inc.,* 414 Pa. 505, 513–514, 200 A.2d 871 (1964). Rules of statutory construction are to be resorted to only when an ambiguity in the statutory language does exist; they are not to be used to create doubt but only to remove it. *Kritz Estate,* 387 Pa. 223, 227, 127 A.2d 720 (1956).

■ But, as noted by the Supreme Court of Rhode Island, the term "complete loss of hearing" is susceptible of more than a single meaning. In *Pilkanis v. Leesona Corporation,* 101 R.I. 494, 224 A.2d 893 (1966), the Rhode Island court stated:

"The initial question is what within the contemplation of the statute constitutes a 'complete loss of hearing' in one ear. Those words are clearly susceptible of more than a single meaning. Depending on the circumstances, the context and the purposes of their use they may either be given their ordinary and usual meanings or be taken in their absolue and technical sense. An explicit definition appears in a report of an examining physician. He describes a complete loss of hearing as the 'auditory state in which no measurable

hearing at any frequency can be elicitated by pure tone testing.'

$*$ $*$ $*$ $*$ $*$ $*$ $*$

"If the words, however, are taken relatively rather than absolutely, and in the light of everyday experiences, rather than from the viewpoint of a literal clinician, then this precise means of measuring the extent of a hearing loss in percentiles becomes unacceptable. In this relative context a person, even though he is able to hear loud, pure tones, is completely bereft of his hearing if he is unable to communicate with his fellow man and is denied those other practical and useful benefits generally associated with man's usual and customary wants, needs, and pleasures."

See also *Lamont v. Aetna Bridge Company*, 107 R.I. 686, 270 A.2d 515 (1970). We agree with the foregoing, and, hence, since the term "complete loss of hearing" is not free from all ambiguity, resort to rules of statutory construction is proper.

In our view, the inclusion of the adjective "complete" to modify "loss of hearing" in subsection (8) of Section 306(c) indicates that an injured claimant may recover for a loss of hearing, without a showing of economic disability, only if the loss is sufficiently serious to warrant such a recovery. The legislature apparently felt that such seriousness could best be connoted by inclusion of the term "complete". However, while utilizing the term "complete" to distinguish a Section 306(c) loss of hearing from a "partial" loss of hearing which, under Section 306(b), is compensable only upon a showing of economic disability, the legislature did not intend that the term "complete loss of hearing" be read in a literal and absolute sense. To insist upon a literal and absolute interpretation would require, as the Board noted, "that a person . . . stand beside the mouth of an erupting cannon and hear absolutely nothing in either ear before his hearing loss could be described as 'complete' ". Such

an interpretation would be inconsistent with the test applicable to the other specific losses enumerated within Section 306(c) and would effectively frustrate the remedial purposes behind our workmen's compensation legislation.

We, therefore, hold that an injured claimant has suffered a "complete loss of hearing" when the loss is complete "for all practical intents and purposes".[7] As the Board, based upon substantial competent evidence, has already determined that Nissel's loss of hearing satisfied this standard, its award of compensation to Nissel must be reinstated.

The Order of the Commonwealth Court is reversed and the Order of the Workmen's Compensation Board is reinstated.

MANDERINO, J., took no part in the consideration or decision of this case.

POMEROY, J., dissents.

---

7. We note that the Georgia Court of Appeals, although utilizing the "industrial use" test which is no longer the law in Pennsylvania (*Curran v. Walter E. Knipe and Sons, Inc., supra*), has interpreted the term "complete loss of hearing" to mean "for all ordinary and practical purposes unable to hear." *Shipman v. Employers Mutual Liability Insurance Company,* 105 Ga.App. 487, 493, 125 S.E.2d 72 (1962). In the *Shipman* case, the claimant could not hear ordinary and normal sounds with his right ear and upon this evidence and proof of a fifty-one per cent loss in the right ear, a "complete loss of hearing" in that ear was found. Similarly, in *Aetna Insurance Company v. Woody,* 118 Ga.App. 819, 165 S.E.2d 469 (1968), a ruling of "complete loss of hearing" in one ear was sustained upon a finding of a fifty-one per cent loss of hearing in that ear.