650 A.2d 1172

Anthony PETTOLA, Petitioner,

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (SHARON STEEL CORPORATION), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 30, 1994.

Decided Nov. 21, 1994.

Samuel S. Blaufeld, Pamela M. Schiller and Barbara E. Holmes, for petitioner.

Ronald M. Puntil, Jr., for respondent.

Before McGINLEY and NEWMAN, JJ., and LORD, Senior Judge.

NEWMAN, Judge.

Anthony Pettola (Claimant) appeals from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision denying him specific loss benefits under Section 306(c)(8) of The Pennsylvania Workers' Compensation Act (Act).[1] We vacate and remand.

Claimant worked for Sharon Steel Corporation (Employer) for nearly forty years as an electronic arc furnace operator, slitter and laborer. During the course of that employment, Claimant was exposed to loud and continuous noise from various machines operating in close proximity to his work place. Ear protection became available to Claimant in 1978, and he wore it approximately fifty percent of the time.

On November 12, 1991, Claimant filed a claim petition, alleging that he suffers a hearing loss in both ears caused by prolonged exposure to noise at work. Employer filed an answer, denying the material allegations of Claimant's petition.

The referee subsequently held hearings on January 15, 1992 and June 17, 1992. In support of his petition, Claimant testified that he has difficulty carrying on conversations on the telephone, understanding the minister at church and understanding conversation in movies when softly spoken. Claimant stated that he cannot understand his wife in the presence of any background noise, and he must look at her to understand her. He further stated that his wife must order for him in restaurants because he cannot understand the servers.

Claimant also presented the deposition testimony of Stephen M. Froman, M.D., an otolaryngologist. Dr. Froman testified, based on his examination and testing, that Claimant suffers a bilateral, sloping, mild to severe neurosensory hearing loss with markedly impaired speech discrimination ability. It was Dr. Froman's opinion that Claimant's complaints concerning his hearing difficulties in everyday life are consistent with the audiologic test results obtained by his audiologist. Dr. Froman also stated that the hearing loss is a result of

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 513(8).

Claimant's exposure to loud noises during his employment and that he has lost the use of his hearing for all practical intents and purposes.

Employer, in opposition, presented the deposition testimony of Donald B. Kamerer, M.D. Dr. Kamerer testified that he agreed with Dr. Froman that Claimant has some hearing impairment, although greater in his right ear than his left, and long-term exposure to noise at work was a chief factor in Claimant's hearing impairment. Dr. Kamerer stated, however, that Claimant has not lost his hearing for all practical intents and purposes, although he has some hearing loss. According to Dr. Kamerer, Claimant has a combined binaural hearing impairment of four percent.

Upon consideration of the evidence presented, the referee found the testimony of Dr. Froman to be credible with respect to the type of hearing loss sustained by Claimant and its causal relationship to his work. The referee, however, rejected Dr. Froman's conclusion that Claimant has lost his hearing in both ears for all practical intents and purposes on the basis that the doctor's opinion was inconsistent with Claimant's scores in speech discrimination testing, testing performed by Dr. Froman.[2] The referee noted that according to Dr. Fro-

2. In his opinion, the referee incorrectly refers to this testing as "speech reception threshold testing."

To determine a patient's speech reception threshold (SRT), the patient is placed in a soundproof booth, which is an acoustically ideal environment, and a standardized word list is presented to each ear individually. Dr. Froman's Deposition at 11. The degree of loudness or decibel level at which the patient can accurately repeat fifty percent of the words is the patient's SRT. *Id.* Normal SRTs range from zero to approximately 20 to 25 decibels. *Id.*

To test speech discrimination, the patient again is placed in a soundproof booth, and a standardized word list is presented to each ear individually. *Id.* at 13. The word list is different than the type of word list that is used on the SRT test. *Id.* The word list is presented at a standardized decibel level, which is generally 40 decibels above the patient's SRT or the patient's most comfortable level of hearing. *Id.* The patient is asked to repeat the word that he hears, and the percentage of words that he repeats correctly is the patient's discrimination ability. *Id.* at 14.

The normal conversational range is from 40 to 60 to 65 decibels. Referee's Finding of Fact No. 10. At these levels, Claimant's scores were as follows:

man's results, Claimant's sound field testing at 60 decibels (the high end of the conversational range) was merely two percentage points from being considered normal. In addition, relying upon the testimony of Dr. Kamerer, the referee found that Claimant did not suffer a compensable loss of hearing. As such, the referee concluded that Claimant did not sustain his burden of proof, and the referee dismissed Claimant's petition.

Claimant appealed to the Board, and the Board affirmed the referee's decision. This appeal followed.

■ On appeal to this court, the sole issue before us is whether substantial evidence exists in the record to support the referee's finding that Claimant did not suffer a compensable hearing loss.[3]

■ As a preliminary matter, we note that Section 306(c)(8) of the Act sets forth compensation due for the complete loss of hearing in both ears. A determination of whether a claimant has suffered a loss under this section of the Act is a question of fact. *Boeing Helicopter Co. v. Workmen's Compensation Appeal Board (McCanney)*, 157 Pa.Commonwealth Ct. 76, 629 A.2d 184 (1993), *petition for allowance of appeal granted*, 537 Pa. 642, 644 A.2d 165 (1994).

| | Right Ear | Left Ear | Sound Field |
|---|---|---|---|
| 40 decibels | 28% | 60% | 60% |
| 50 decibels | 48% | 76% | 72% |
| 60 decibels | 52% | 80% | 88% |

Finding of Fact No. 9.
 A score of 90% or better is normal, and a score below 90% is considered abnormal. Finding of Fact No. 11.

3. Our standard of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of facts are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan)*, 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd*, 531 Pa. 287, 612 A.2d 434 (1992). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Wells–Moore v. Workmen's Compensation Appeal Board (McNeil Consumer Products Co.)*, 144 Pa.Commonwealth Ct. 382, 601 A.2d 879 (1992).

Therefore, the referee's finding that Claimant did not suffer such a hearing loss cannot be disturbed on appeal if it is supported by substantial evidence. *Williams v. Workmen's Compensation Appeal Board (Montgomery Ward)*, 127 Pa.Commonwealth Ct. 587, 562 A.2d 437 (1989).

This court has defined a complete loss of hearing as a loss of hearing for all practical intents and purposes, rather than a "complete" loss. *Pittsburgh Press Co. v. Workmen's Compensation Appeal Board (Taress)*, 143 Pa.Commonwealth Ct. 609, 615, 600 A.2d 626, 629 (1991) (citing *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975)). Our Supreme Court in *Hartlieb* stated:

If the words [complete loss of hearing] are taken relatively rather than absolutely, and in light of everyday experiences, rather than from the viewpoint of a literal clinician, then *this precise means of measuring the extent of a hearing loss in percentiles becomes unacceptable.* In this relative context a person, even though he is able to hear loud, pure tones, is completely bereft of his hearing if he is unable to communicate with his fellow man and is denied those other practical and useful benefits generally associated with man's usual and customary wants, needs and pleasures.

465 Pa. at 255, 348 A.2d at 749 (emphasis added).

■■■ The test norm of a "complete loss of hearing for all practical intents and purposes" involves a determination as to whether an individual can function in his or her usual social, work and familial settings. *ARMCO, Inc. v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Commonwealth Ct. 326, 590 A.2d 827, *petition for allowance of appeal denied*, 529 Pa. 636, 600 A.2d 955 (1991). The fact that a claimant has some hearing ability, which is of some value to him, is not inconsistent with a finding that he has suffered a compensable hearing loss. *Id.*

On appeal to this court, Claimant asserts that substantial evidence does not support the referee's finding that he did not lose his hearing for all practical intents and purposes because Dr. Kamerer based his opinion solely on the results of audio-

logic testing and did not consider Claimant's ability to function in social and familial settings. Claimant argues that without such testimony, Dr. Kamerer's opinion is insufficient to overcome his own testimony that he is unable to function in the everyday aspects of his life.

In support of his position, Claimant relies upon this court's holding in *Russell v. Workmen's Compensation Appeal Board (Cooper Bessemer)*, 162 Pa.Commonwealth Ct. 97, 638 A.2d 373 (1994). The referee in *Russell* credited the claimant's testimony that he had difficulty understanding conversations unless he was facing the speaker, that he had trouble hearing a telephone ring in the next room and that he had difficulty carrying on a conversation by telephone. However, the referee further found, relying upon the opinion of the employer's medical expert, that the claimant did not lose his hearing for all practical intents and purposes. Notably, the employer's medical expert based his opinion solely on clinical audiologic tests. Claimant appealed to the Board, and the Board affirmed.

On appeal to this court, we reversed, holding that an expert's medical opinion based on clinical tests without regard to whether the claimant could function in social and family situations was insufficient to support the referee's finding that the claimant had not suffered a compensable hearing loss. This court stated:

> [a] finding that hearing is not lost for all practical intents and purposes based purely on clinical evidence was disfavored by our Supreme Court in *Hartlieb*, holding that the test to determine if there is a complete loss of hearing is how a person is affected in everyday life.

*Russell*, 162 Pa.Commonwealth Ct. at 102, 638 A.2d at 376.

Regarding the present appeal, we note that its facts are strikingly similar to those in *Russell*. Dr. Kamerer, in rendering his opinion, indicated that he computed the degree of Claimant's hearing impairment according to a formula of the American Academy of Otolaryngology and Head and Neck Surgery (AAO). Dr. Kamerer's Deposition of May 29, 1992, at

5. Using this formula, Dr. Kamerer calculated that Claimant has a twenty-three percent loss of hearing in his right ear, a zero percent loss of hearing in his left ear and a combined binaural hearing impairment of four percent. *Id.* at 5. However, Dr. Kamerer testified on cross-examination that the AAO formula considers pure tones only and does not allow for a patient's hearing complaints in everyday life. *Id.* at 8. In addition, while Dr. Kamerer recognized that Claimant has difficulty hearing in the presence of background noise or in large rooms, auditoriums and theaters, he never addressed how this loss affected Claimant's ability to function in his usual social, work and familial settings. Dr. Kamerer's reliance on clinical data without more is insufficient to support the referee's finding that Claimant did not lose his hearing for all practical intents and purposes.

 Unlike the referee in *Russell,* however, the referee here did not indicate whether he credited Claimant's testimony regarding his subjective complaints. This fact is critical because we believe that a determination of whether a claimant has sustained a specific loss must be based, at least in part, on whether the referee has accepted as credible the claimant's testimony that he has difficulty functioning in his everyday life. *See Hartlieb.* For example, if the referee in this case had found credible Claimant's testimony that he is unable to function in social and household settings, the referee's decision could not stand under *Russell.* However, if the referee did not believe Claimant's complaints of hearing impairment, this court would have to affirm his decision.

 In this Commonwealth, it is well settled that an appellate court should not infer from the absence of a finding, including credibility determinations, that the question was resolved in favor of the party who prevailed before the referee. *ARMCO, Inc..* Where a referee did not make such findings, the case must be remanded so that findings may be supplied. *Id.*

Accordingly, we vacate the order of the Board and remand this matter to it with instructions to remand to the referee so

that he may make additional findings of fact, including a credibility determination with respect to Claimant's testimony.

While we give full respect to and acknowledge that this court is bound by our Supreme Court's holding in *Hartlieb*, which further defined the term "complete loss of hearing" as used in Section 306(c)(8) of the Act, we also are cognizant that technology in hearing science has advanced significantly since 1975 when *Hartlieb* was decided. Because clinical testing in certain areas is a more precise and accurate means of measuring hearing loss than it was twenty years ago, objective test results may represent a more trustworthy method of measuring hearing loss than a claimant's own testimony that he cannot hear. Therefore, we respectfully suggest that the legislature re-examine the Act's provisions dealing with occupational hearing loss in recognition of the advancements that have been made in hearing science and the development of medical tests that provide reliable, objective results.[4]

## ORDER

AND NOW, November 21, 1994, we vacate the order of the Workmen's Compensation Appeal Board, dated May 5, 1994, and we remand the matter to the Board with instructions to remand to the referee so that he may make additional findings of fact, including a credibility determination with respect to Claimant's testimony.

We relinquish jurisdiction.

McGINLEY, J. concurs in the result only.

---

4. These tests include the auditory brain stem response test, the Lombard test and the Stenger test.