Frank PRESOCK, Petitioner

v.

**The DEPARTMENT OF MILITARY AND VETERANS AFFAIRS, Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 1, 2004.
Decided Aug. 3, 2004.

Jonathan A. Picker, Norristown, for petitioner.

Michael C. Barrett, Annville, for respondent.

BEFORE: COLINS, President Judge, and COHN, Judge (P), and MIRARCHI, Jr., Senior Judge.

OPINION BY Senior Judge MIRARCHI, Jr.

Frank Presock (Presock) appeals from an order of the Adjutant General of Pennsylvania that denied his appeal from the decision of the Department of Military and Veterans Affairs (Department) terminating his paralyzed veteran's pension. The issues on appeal are: (1) whether Presock suffered a loss of use of two or more extremities for the purpose of determining his eligibility for the paralyzed veteran's pension under Section 7702 of the Military and Veterans Code (Code), *as amended,* 51

Pa.C.S. § 7702; and (2) whether the Department was justified in terminating Presock's paralyzed veteran's pension without any new supporting medical evidence. We reverse.

The relevant facts found by the Adjutant General are undisputed. Presock served in the United States Army from 1968 until he was honorably discharged in October 1974. He thereafter developed type II diabetes mellitus and diabetic peripheral neuropathy as a result of his exposure to the chemical known as "Agent Orange," [1] while serving in Vietnam from 1969 to 1970. On November 12, 2002, Presock filed an application for a paralyzed veteran's pension under Section 7702 of the Code, which provides in relevant part:

(a) **Amount and eligibility.**—In addition to any other assistance provided by the Commonwealth and in addition to any compensation provided by the Federal Government, every *paralyzed veteran* shall be paid a pension of $150 per month. Applications for the pensions shall be made to and in the form prescribed by the department. The Adjutant General shall determine the eligibility of every applicant for a pension.... (Emphasis added.)

. . . .

(c) **Definition.**—As used in this section the term *'paralyzed veteran'* means any person who served in the military or naval forces of the United States, or any woman's organization officially connected therewith, and who gave this Commonwealth as his or her place of residence at the time of entering the military or naval forces of the United States and who, while performing duties connected with such service, suffered an injury or incurred a disease which re-

sulted in *the loss or loss of use of two or more extremities.* (Emphasis added.)

As part of his application for the paralyzed veteran's pension, Presock completed Form 3288 authorizing the Unites States Department of Veterans Affairs (VA) to release his information to the Department. In the Form 3288 completed by Presock, the Department requested the following information:

*SERVICE–CONNECTED*—Did the veteran receive injury or disease which resulted in the loss or loss of use of two or more extremities (arms/hands or legs/feet) during an established war or armed conflict as established by the Veterans Administration[?]

The VA representative answered "yes" to the above question and returned the Form 3288 to the Department. The Department then granted Presock's application and began making a monthly paralyzed veteran's pension payment beginning November 2002.

In February 2003, the Department sent another Form 3288 to the VA requesting the following information:

1. *PARALYZED*—Did the veteran's injury result in the loss or loss of use of two or more extremities (arms/hands or legs/feet)?

2. *SERVICE–CONNECTED*—Is the veteran's injury considered service-connected by the Department of Veterans Administration?

The same VA representative answered "yes" to the second question, but answered "no" this time to the first question.

Relying on that response, the Department's Deputy Director for Veterans' Affairs, James Davison (Davison), terminated

---

**1.** Section 7901 of the Code, 51 Pa.C.S. § 7901, defines "Agent Orange" as "[t]he herbicide composed of trichlorophenoxyacetic acid and dichlorophenoxyacetic acid and the contaminant dioxin (TCDD)."

Presock's paralyzed veteran's pension in a letter dated February 14, 2003. Presock appealed the termination, and a hearing was held before the hearing officer appointed by the Adjutant General. At the hearing, the parties stipulated that Presock entered the Army as a Pennsylvania resident and that he suffered from the service-related type II diabetes mellitus and diabetic peripheral neuropathy. The only issue before the hearing officer was whether Presock suffered "a loss of use of two or more extremities" for the purpose of determining his eligibility for the paralyzed veteran's pension under Section 7702 of the Code.

Davison testified that he did not have any medical background or training for reviewing medical records, that in determining the eligibility for the paralyzed veteran's pension, the Department relied on the information obtained from the VA due to lack of expertise and medical staff, and that he terminated Presock's pension based on the VA representative's response in the second VA Form 3288 that Presock did not lose the use of two or more extremities.

Presock testified regarding his physical limitations resulting from the type II diabetes mellitus and diabetic peripheral neuropathy, including tingling, numbness and shaking in his hands; inability to lift and hold objects, and very limited ability to sit, stand and walk; and required use of a cane, crutches and a walker to get around. Presock further testified that he was receiving a spinal manipulation from his chiropractor three to four times a week, and that he felt that he had lost the use of both arms and legs.

Presock also presented the report of his chiropractor who opined that "Mr. Presock has a permanent condition of diabetes mellitus type II and will continue to suffer the associated side effects of type II diabetes including the loss of use of arms and legs." Report of Patrick M. Borja, D.C. dated March 24, 2003, p. 2. In the VA's Rating Decision rendered on July 22, 2002 before Presock filed the application for the paralyzed veteran's pension, the VA found that as of February 28, 2002, Presock had the service connection for diabetic peripheral neuropathy with evaluations of 20% in his upper extremities (radical nerve groups) and 10% in his lower extremities (common peroneal nerve groups).

After the hearing, the Adjutant General accepted the hearing officer's recommendation and denied Presock's appeal. Presock appealed the Adjutant General's decision to this Court which granted the Department's motion and remanded the matter to the Adjutant General to issue a proper adjudication. In the subsequently issued adjudication, the Adjutant General concluded that Presock's service-related physical limitations did not amount to a "total" loss of use of two or more extremities, and that he was therefore ineligible for the paralyzed veteran's pension.

Presock contends that he is not required to prove a "total" inability to move his arms and legs to establish a loss of use of two or more extremities under Section 7702 of the Code, that the evidence accepted by the Adjutant General was sufficient to establish his eligibility for the paralyzed veteran's pension, and that the Department improperly terminated his pension based solely on the information provided by the VA without any new supporting medical evidence.[2]

**2.** This Court's scope of review of the Adjutant General's adjudication is limited to determining whether constitutional rights were violat-

ed, whether an error of law was committed, or whether necessary findings are supported

At the hearing, the Department did not dispute Presock's following testimony regarding his service-related physical limitations. Presock falls down many times after getting out of bed before he is finally able to stand. He can only sit for ten to fifteen minutes, stand for three to four minutes, and walk one city block at a time. Although he can pick up papers with his hands and point to things, he cannot lift objects, turn around, hold a rifle or a fishing pole, replace wipers on his car, cut the grass, and walk the dog. He no longer holds his grandchildren because he is afraid of dropping them. He must use a cane, crutches and a walker prescribed by the VA to get around.

The Adjutant General found that Presock "testified credibly as to the physical limitations that he suffers as a result of his service-connected disease." Adjutant General's Adjudication, p. 4. The Adjutant General concluded, however, that although Presock demonstrated that the type II disease diabetes mellitus severely affected the use of his extremities, he was ineligible for the paralyzed veteran's pension under Section 7702 of the Code because his loss of the use of the arms and legs was only partial, not total. The Adjutant General stated:

> Petitioner states that he is unable to stand for three to four minutes—but this statement implies he is nonetheless able to stand. Petitioner states that he cannot walk for more than a city block—but this statement implies that he is nonetheless able to walk for a shorter distance. Petitioner states that he does not pick up his grandchildren because he is afraid of dropping them—but this statement implies that he is able to pick them up, and consequently, pick up oth-

er things that would not be harmed by being dropped.

*Id.*

In support his conclusion, the Adjutant General relied on the definition of a "loss of use" set forth in 43 Pa.Code § 5.41, promulgated pursuant to Section 7702(b) of the Code, which provides that "[a] person is deemed to have lost the use of limbs when the person's balance, propulsion or manipulation is affected so as to permanently preclude locomotion or use of the arms and hands without the aid of braces, crutches, canes, wheelchairs or other devices."

■■■ It is well established that provisions of a statute must be liberally construed to effect their objects and promote justice, except provisions of certain statutes inapplicable to this matter. Section 1928(b) and (c) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1928(b) and (c). Further, any omitted words may not be supplied in interpreting provisions of a statute. *Saw Creek Estates Community Ass'n v. County of Pike,* 808 A.2d 322 (Pa.Cmwlth.2002), *appeal granted,* 572 Pa. 751, 816 A.2d 1104 (2003); *Latella v. Unemployment Compensation Board of Review,* 74 Pa.Cmwlth. 14, 459 A.2d 464 (1983). The statutory construction rules are equally applicable in construing regulations. *Department of Environmental Resources v. Rannels,* 148 Pa.Cmwlth. 182, 610 A.2d 513 (1992).

■■■ Under the plain language in the definition of the loss of use of the limbs in 43 Pa.Code § 5.41, Presock was only required to show that his balance, propulsion or manipulation was affected to the extent that without use of devices, such as canes, crutches or wheelchairs, his locomotion or use of the arms and hands would be permanently precluded. Under such defini-

by substantial evidence. Section 704 of the

Administrative Agency Law, 2 Pa.C.S. § 704.

tion, Presock was not required to show a "total" loss of use or absolute no use of the arms and legs. By requiring Presock to demonstrate a "total" loss of use of the arms and legs to be eligible for the paralyzed veteran's pension, the Adjutant General improperly supplied the word "total" in interpreting the definition of the loss of use in 43 Pa.Code § 5.41.[3]

The evidence presented by Presock and accepted by the Adjutant General establishes that Presock suffers the permanent and severe service-related physical limitations and must use the prescribed cane, crutches and walker to get around. Presock's service-related physical limitations, therefore, fall within the definition of the loss of use of the limbs under 43 Pa.Code § 5.41. Hence, Presock is eligible for the paralyzed veteran's pension under Section 7702 of the Code.[4]

Accordingly, the order of the Adjutant General is reversed.

### ORDER

AND NOW, this 3rd day of August, 2004, the order of the Adjutant General of

Pennsylvania in the above-captioned matter is reversed.

---

3. The courts have similarly interpreted the specific permanent "loss" of various parts of the body under Section 306(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 513, by holding that to be eligible for specific loss benefits, the claimant is not required to show that the injured part of the anatomy be of absolute no use; rather, the proper test is whether the claimant has suffered the permanent loss of use of the injured part of the body for all practical intents and purposes. *Workmen's Compensation Appeal Board v. Hartlieb*, 465 Pa. 249, 348 A.2d 746 (1975); *Hinkle v. H.J. Heinz Co.*, 462 Pa. 111, 337 A.2d 907 (1975); *Klaric v. Workmen's Compensation Appeal Board (National Castings, Div. Midland Ross Corp.)*, 71 Pa.Cmwlth. 91, 455 A.2d 217 (1983).

4. To justify the termination of Presock's pension, the Department states that "[w]hen they [the VA] certified the appellant as eligible, he

was granted the pension; when they certified the appellant as *in* eligible, that determination was modified." Department's Brief, p. 11 (emphasis in original). As the Department acknowledges, however, the paralyzed veteran's pension is a state program administered separately from the federal veterans' benefit programs under the federal statute and regulations. The Department terminated Presock's pension without any new supporting medical evidence and without any independent evaluations of his conditions, relying solely on the VA representative's response contained in the second Form 3288. Moreover, the Department did not even provide the definition of "loss of use" set forth in 43 Pa.Code § 5.41 in seeking the information from the VA. The eligibility for the state pension should not be dependent on the conflicting opinions of the VA provided to the Department.